CANE CREEK CONSERVATION
AUTHORITY and Teer Farms,
Inc., Plaintiffs,

v.

ORANGE WATER AND SEWER AUTHORITY; John O. Marsh, Jr., Secretary of the Army; Lt. General Joseph K. Bratton, Chief of Engineers of the Army Corps of Engineers; Col. Robert K. Hughes, District Engineer, Wilmington District, Army Corps of Engineers; Col. Wayne A. Hanson, Wilmington District, Army Corps of Engineers, Defendants.

CANE CREEK CONSERVATION
AUTHORITY and Teer Farms,
Inc., Plaintiffs,

v.

ORANGE WATER AND SEWER AUTHORITY and Robert K. Hughes, District Engineer for the Army Corps of Engineers, Defendants.

Nos. C–82–992–D, C–83–72–D.

United States District Court,
M.D. North Carolina,
Durham Division.

Aug. 10, 1984.

David A. Harlow, Durham, N.C., for plaintiffs.

Thomas Erwin and Charles D. Case, Raleigh, N.C., for Orange Water and Sewer Authority.

Carl Strass, Washington, D.C., for the Army Corps of Engineers.

## MEMORANDUM OPINION

GORDON, Senior District Judge.

These cases come before the Court on numerous motions by the opposing parties.[1] Inasmuch as these two actions involve common questions of law and fact, and parties with identical interests, the actions have been consolidated for the purpose of considering these motions.

## I. INTRODUCTION

### A. *Cane Creek I*

In this action, plaintiffs seek a declaratory judgment and an injunction prohibiting the defendant Orange Water and Sewer Authority (OWASA) from proceeding under an allegedly expired Section 404 permit to pursue the construction of a water supply dam and reservoir on Cane Creek. In response, defendant OWASA seeks a declaratory judgment upholding the validity of the Section 404 permit, declaring it in full force and effect. By Order filed on November 16, 1983, this Court granted the defendants' motion to join additional parties Marsh (Secretary of the Army), Bratton (Chief Engineer of the Army) and

---

**1.** Cane Creek I (C–82–992–D): (1) Plaintiffs' Motion to Consolidate Actions (with C–83–72–D) (1/31/84); (2) Federal Defendants' Motion to Dismiss for Failure to Allege Standing (2/13/84); (3) Plaintiffs' Motion to Amend the Complaint (6/4/84); (4) Plaintiffs' Motion to Intervene (7/20/84); (5) Proposed Amendment to the Complaint (no date). *Cane Creek II* (C–83–72–D): (1) Federal Defendant's Motion to Dismiss or for Summary Judgment (1/20/84); (2) Plaintiffs' Motion for Summary Judgment (1/20/84); (3) Plaintiffs' Motion to Consolidate (with C–82–992–D) (1/31/84); (4) Plaintiffs' Motion to Amend the Complaint (3/6/84); (5) Plaintiffs' Motion for Preliminary Injunction (4/6/84); (6) Plaintiffs' Motion to Vacate and Remand to Supplement the Administrative Record (7/20/84); (7) Plaintiffs' Motion to Intervene (7/20/84); and (8) Proposed Amendment to the Complaint (no date).

Hughes (District Engineer of the Army) as party defendants. In addition, the Court denied the plaintiffs' motion for summary judgment since material factual issues still remained in dispute. As a result of the joinder of the additional parties defendant, an amended Complaint was filed on December 20, 1983, with defendant OWASA filing an answer on January 17, 1984. On the federal defendants' own initiative, the administrative record was filed with the Clerk of Court on April 9 and April 30, 1984. A hearing on all pending motions was held in Greensboro on July 20, 1984, where stipulations of dismissal were entered for plaintiffs Edward Johnson, Cecil Crawford, and Forrest Young. Thus, Cane Creek Conservation Authority (CCCA) and Teer Farms, Inc. remain as the only plaintiffs.

### B. *Cane Creek II*

In this related action, plaintiffs seek a declaratory judgment and an injunction prohibiting OWASA from proceeding under an allegedly invalid Section 404 permit to pursue the construction of the same dam. Specifically, plaintiffs contend that the aforementioned Section 404 permit was issued by the District Engineer in reliance upon the North Carolina Environmental Management Commission's certification of the Cane Creek Project (*See* N.C.Gen.Stat. § 162A–7), which certification had been reversed and declared invalid by the North Carolina Court of Appeals on the same date that the District Engineer issued the Section 404 permit. *See In re Environmental Management Commission Final Order*, 53 N.C.App. 135, 280 S.E.2d 520 (1981). Moreover, plaintiffs contend that the District Engineer's decision to issue the Section 404 permit was deficient as a matter of law for failure properly to evaluate the various public interests involved in the issuance of a permit, in direct violation of the Administrative Procedure Act, 5 U.S.C.

§§ 551 *et seq.*, the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.*, and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.*

The defendants counter that, among other things, the first claim is moot and meritless; the North Carolina Court of Appeals in overturning the initial certification clearly made no decision on the merits of the certification; and in any event, 33 C.F.R. § 320.4(j)(5) (1981) provided authority for the defendants to process the application if there was delay at the state level.[2] Furthermore, defendants assert that the plaintiffs' second claim should be estopped for failure to raise this claim in Cane Creek I. Hence, defendants seek a declaratory judgment upholding the validity of the Section 404 permit, and declaring it in full force and effect. The administrative record for Cane Creek II was also filed with the Clerk of Court on April 9 and 30, 1984. A hearing on all pending motions was held in Greensboro on July 20, 1984, and this case was consolidated with Cane Creek I for purposes of oral argument. Stipulations of dismissal were entered in this action as well for plaintiffs Edward Johnson, Cecil Crawford, and Forrest Young, leaving CCCA and Teer Farms, Inc. as the only remaining plaintiffs.

## II. DISCUSSION

■ The plaintiffs have apparently brought these actions against OWASA and the federal defendants under Section 10 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, which gives any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" the right to seek federal court review. These suits seek to prevent construction of the reservoir dam by challenging (1) the continued validity of the Section 404 permit, because no construction work was started within the time limits of the

---

**2.** At the time of the Corps' decision, that section provided:

> If the responsible Federal, State, and/or local agency fails to take definitive action to grant or deny required authorizations or to furnish comments as provided in paragraph (j)(3) of

this section, within three months of the issuance of the public notice, the District Engineer shall process the application to a conclusion.

33 C.F.R. § 320.4(j)(5) (1981).

permit, and (2) the administrative procedure followed by the District Engineer in issuing the Section 404 permit for the project. The threshold issue, however, is whether the plaintiffs have alleged particularized actual or threatened injuries sufficient to give this Article III Court jurisdiction to hear their claims. While the APA has broadened "the categories of injury that may be alleged in support of Article III standing," it has not displaced the analytical framework under which that determination is made. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

■■■■ Article III of the United States Constitution confines the federal courts to adjudicating "cases" or "controversies". An individual seeking judicial relief from an Article III court must demonstrate that there is an actual case or controversy which has caused him some judicially cognizable injury. At a minimum, such an individual must show " 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *quoting Gladstone v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976). *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376, 102 S.Ct. 1114, 1122, 71 L.Ed.2d 214 (1982); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Warth v. Selden*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Data Processing Service Organization v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). These cases demonstrate that the focus of the standing inquiry must always be the party's "injury in

fact"—whether he has suffered a sufficiently concrete injury to justify the invocation of the judiciary's remedial powers. *Accord, Motor Coach Industries, Inc. v. Dole*, 725 F.2d 958, 963 (4th Cir.1984).

While constitutional analysis of standing requires evaluation of concepts not easily susceptible of precise definition, *see Valley Forge Christian College*, 454 U.S. at 471–476, 102 S.Ct. at 757–60, the Supreme Court has noted that many standing questions can be answered by comparing the allegations of the particular complaint to those made in prior standing cases. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). As the Supreme Court recently instructed in *Allen v. Wright*, —— U.S. ——, ——, 104 S.Ct. 3315, 3324–26, 82 L.Ed.2d 556 (1984):

> [T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative? These questions and any others relevant to the standing inquiry must be answered by reference to the Article III notion that federal courts may exercise power only 'in the last resort, and as a necessity,' *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 [12 S.Ct. 400, 402, 36 L.Ed. 176] (1892), and only when adjudication is 'consistent with a system of separated powers and the [dispute is one] traditionally thought to be capable of resolution through the judicial process,[1] *Flast v. Cohen*, 392 U.S. 83, 97 [88 S.Ct. 1942, 1951, 20 L.Ed.2d 947] (1968).

Defendants assert that the plaintiffs fail to satisfy a critical element for standing because the complaint has not identified any injury within the zone of interests protected by the APA, the National Environ-

mental Policy Act, or the Federal Water Pollution Control Act. For instance, in Cane Creek I, the defendants note that the allegations contained in the plaintiffs' complaint only contend that OWASA is attempting to proceed under an expired Section 404 permit. Yet the plaintiffs allege no injury from the federal defendants' claim that the permit has not expired. Further, in Cane Creek II, the defendants note that the plaintiffs allege no statutory or equitable source of injury from the original issuance of the permit under federal guidelines, and consequently, have not identified any injury to any protected interest.

■■■ This Court is in agreement that actual injuries within the zone of interests protected by the relevant federal statutes have not been alleged sufficiently, if at all.[3] Normally, a person has standing to seek judicial review under the APA only if he can show that he has suffered or will suffer actual injury, whether economic or otherwise. *Data Processing, supra; Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). This constitutional standard has not been confined to those who show economic harm, as "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society." *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); *see also, Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1972). In *Sierra Club,* however, the Supreme Court stressed the importance of demonstrating that the party seeking review be himself among the injured, for it is this requirement that gives a litigant a direct stake in the controversy. In that case, "[t]he Sierra Club failed to allege that it or its members would be affected in any of their activities or pastimes ... by the development." 405 U.S. at 735, 92 S.Ct. at 1366. Here, as in *Sierra Club,* "[n]owhere in the pleadings or affidavits did the [plaintiffs] state that its members use [the Cane Creek area] for any purpose, much less that they use it in any way that would be significantly affected by the proposed action of the [defendants]." 405 U.S. at 735, 92 S.Ct. at 1366. *See generally, Sierra Club v. Froehlke,* 486 F.2d 946 (7th Cir.1973). When a plaintiff asserts no individualized harm to itself or its members,[4] such a party lacks standing to maintain the action. *Sierra Club,* 405 U.S. at 731–41, 92 S.Ct. at 1364–69.

---

3. The only "injuries" alleged by the remaining plaintiffs, Cane Creek Conservation Authority and Teer Farms, Inc., are stated as follows:

Plaintiff Teer Farms, Inc. is a North Carolina corporation which owns lands which would be taken for the proposed project.

Plaintiff Cane Creek Conservation Authority is an unincorporated association composed primarily of residents of Orange County, North Carolina. It is organized for the purpose, *inter alia,* of preserving the rural environment and community, and natural bottom land environment and habitat at Cane Creek, North Carolina.

Cane Creek I and II complaints, ¶¶ 2, 3.

4. Certainly, this Court can envision the possibility of claimants alleging a sufficient harm to their use and enjoyment of environmental interests, but it simply finds no mention of a specific injury of any kind in the present factual allegations. For environmental cases in which injury was alleged sufficiently to withstand standing challenges, *see, e.g., United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (plaintiffs claimed that the specific and illegal action of the Interstate Commerce Commission would directly harm them in their use of the natural resources of a specified area); *Save Our Wetlands, Inc. v. Sands,* 711 F.2d 634 (5th Cir. 1983) (environmental corporation alleged that its members' economic and recreational use of area might be permanently compromised); *Save the Bay, Inc. v. U.S. Corps of Engineers,* 610 F.2d 322 (1980), *cert. denied,* 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980) (non-profit corporation alleged economic, aesthetic, and environmental injury to its members who resided in the particular geographic location); *Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d 1164 (6th Cir.1972) (association alleged that many of its members had used river for various purposes and wished to preserve river and its surroundings); *American Motorcyclist Association v. Watt,* 534 F.Supp. 923 (D.C. Cal.1981), *aff'd* 714 F.2d 962 (9th Cir.1983) (organization alleged evidence of loss of recreational opportunities by its members). *See also, Citizens Committee for Hudson Valley v. Volpe,* 425 F.2d 97 (2d Cir.1970), *cert. denied,* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970).

Mere allegations of administrative irregularity without allegations of substantive injury will not support a claim. *Codd v. Velger,* 429 U.S. 624, 626–28, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977); *NRDC v. EPA,* 481 F.2d 116, 120–21 (10th Cir.1973).

■ Hence, the plaintiffs in the subject cases have failed to allege the kind of direct harm required under Article III;[5] rather, plaintiffs allege only a generalized fear of the loss of the natural environment currently found in the Cane Creek area. Such a generalized grievance, shared in substantially equal measure by all members of the public, is insufficient to give plaintiffs standing to challenge the administrative determinations made in this matter.[6] *See Gladstone v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Warth v. Seldin, supra; Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *Matthews v. United States,* 526 F.Supp. 993 (M.D.Ga.1981), *aff'd* 713 F.2d 677 (11th Cir.1983). As a result, plaintiffs' claims in both actions merely serve as an attempt to compel this Court to usurp the defendants' administrative function without demonstrating the violation of a specific legal obligation that has caused plaintiffs direct harm. *See Allen v. Wright,* —— U.S. ——, 104 S.Ct. at 3330–31; *Minnesota State Board v. Knight,* —— U.S. ——, ——, 104 S.Ct. 1058, 1065–67, 79 L.Ed.2d 299 (1984); *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 556–558, 98 S.Ct. 1197, 1218–19, 55 L.Ed.2d 460 (1978).

## III. CONCLUSION

■ Accordingly, the plaintiffs' unopposed motion to consolidate these actions is granted for purposes of this ruling, and the defendants' motions to dismiss in Cane Creek I and II are hereby granted. In so ruling, the Court notes that the following motions are hereby rendered moot because of this ruling, and are denied: plaintiffs' motion to intervene,[7] plaintiffs' motion for

**5.** The Court notes that some of the individual plaintiffs filed a motion to amend the Complaint by adding the following sentence:

"The plaintiffs Edward Johnson, Cecil Crawford, and Forrest Young, as residents of the Cane Creek Community, presently enjoy both the bottom land habitat and environment of Cane Creek and the strong social framework of the rural Cane Creek Community, both of which would be destroyed by the building of the Cane Creek Reservoir pursuant to the permit which is the subject of this action."

Each of these individual plaintiffs, however, entered into Stipulations of Dismissal filed with this Court on July 20, 1984, and their allegations of prospective injury cannot be considered by this Court in reaching its decision.

**6.** Furthermore, the Court notes that at oral argument, counsel for defendant OWASA stated that OWASA had yet to exercise its power of condemnation to obtain the necessary property for the Cane Creek project. All property acquisitions by OWASA have apparently been accomplished by voluntary purchases from affected landowners. Thus, there is no governmental activity that this Court might have authority to enjoin. That plaintiff Teer Farms *may* have a portion of its property condemned is nothing more than speculation; such a fear does not give it standing to sue. In addition, the transfer of title to land is an environmentally neutral act that is not, by itself, a basis for a challenge of a Section 404 permit. *United States v. 162.20 Acres of Land,* 639 F.2d 299, 304 n. 5 (5th Cir.1981); *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1982); *United States v. 178.15 Acres of Land,* 543 F.2d 1391 (4th Cir. 1976).

**7.** This Court is not entirely convinced that the application to intervene at this late date in the proceedings is "timely." *See NAACP v. State of New York,* 413 U.S. 345, 366–369, 93 S.Ct. 2591, 2603–04, 37 L.Ed.2d 648 (1973); *Spring Construction Co. v. Harris,* 614 F.2d 374 (4th Cir. 1980); *Black v. Central Motor Lines, Inc.,* 500 F.2d 407, 408 (4th Cir.1974). These various individuals attempt to intervene as plaintiffs under Rule 24(a)(2) and Rule 24(b)(2), Fed.R. Civ.P., and have attached proposed amendments to the complaints in Cane Creek I and II alleging various environmental injuries to the intervenors. It is apparent, however, that "[i]ntervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action. Intervention presupposes the pendency of an action in a court of competent jurisdiction and cannot create jurisdiction if none existed before." Wright & Miller, *Federal Practice and Procedure: Civil* § 1917 at 584 (1972). *See ICC v. Southern Railway,* 380 F.Supp. 386, 394–95 (M.D.Ga.1974), *aff'd in relevant part,* 543 F.2d 534 (5th Cir.1976). Accordingly, since none of the original or amended complaints in these actions are sufficient to give plaintiffs standing to sue, there exists no case or controversy over which this Court can consider

summary judgment, plaintiffs' motion for preliminary injunction, and plaintiffs' motion to vacate and remand to supplement the administrative record. In addition, plaintiffs' motion to amend the complaint is also moot since it only pertains to the plaintiffs who entered Stipulations of Dismissal. Consequently, this action is hereby dismissed and each party shall bear its own costs.

the intervenors' motion in the first instance. *See, e.g., Mattice v. Meyer,* 353 F.2d 316 (8th Cir.1965); *Becton v. Greene County Board of Education,* 32 F.R.D. 220, 223 (E.D.N.C.1963). *See also, Black, supra,* at 408.