Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued September 15, 2003    Decided November 14, 2003

No. 02-1155

RANGER CELLULAR AND
MILLER COMMUNICATIONS, INC.,
APPELLANTS

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

COMMNET OF FLORIDA, LLC, ET AL.,
INTERVENORS

―――――

Appeal of an Order of the
Federal Communications Commission

―――――

*Donald J. Evans* argued the cause and filed the briefs for appellants.

*Stanley R. Scheiner*, Counsel, Federal Communications Commission, argued the cause for appellee.  With him on the

―――――

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

brief were *Jane E. Mago*, General Counsel, and *Daniel Armstrong*, Associate General Counsel. *Pamela L. Smith*, Counsel, entered an appearance.

*David J. Kaufman, Philip L. Verveer, David M. Don, Michael F. Morrone, Timothy Feldhause, Michael Deuel Sullivan, L. Andrew Tollin, Craig E. Gilmore, William R. Layton*, and *Carol L. Tacker* were on the brief for intervenors Commnet of Florida, LLC, et al. *Richard L. Brown* entered an appearance.

Before: EDWARDS, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Ranger Cellular and Miller Communications, Inc. (Ranger/Miller) appeal from an order of the Federal Communications Commission (FCC) rejecting Ranger/Miller's challenge to four licenses issued by the FCC to provide cellular phone service in rural markets. We conclude that the appellants lack standing to challenge the validity of the licenses, and we therefore dismiss that challenge for want of jurisdiction. Although Ranger/Miller have standing to challenge the FCC's denial of their alternative demand for a refund of their filing fees, we affirm that denial because it was based on a reasonable reading of the agency's own regulation.

I

We have recently set forth some of the history of this litigation in a related case, *Ranger Cellular & Miller Communications, Inc. v. FCC*, 333 F.3d 255 (D.C. Cir. 2003) (*Ranger/Miller I*), and discuss only the necessary background here. Historically, the FCC first awarded cellular licenses using comparative hearings, and then, starting in 1984, also began awarding them by lottery. After 1986, the Commission employed lotteries exclusively. Appellants Ranger/Miller filed applications in 1988 and 1989 to participate in lotteries for cellular telephone licenses in eight Rural Service Area (RSA) markets, but lost each lottery in which they participated. The Commission awarded most of the licenses

to initial lottery winners, but by the mid–1990s the initial winners were disqualified in each of the eight RSAs. The FCC planned to hold relotteries to determine replacement winners, and, in the meantime, granted interim operating authority to cellular telephone licensees in adjacent areas to provide service. *See Ranger/Miller I*, 333 F.3d at 256–57; *In the Matter of Implementation of Competitive Bidding Rules to License Certain Rural Service Areas, Notice of Proposed Rule Making*, 16 FCC Rcd 4296, 4301, ¶ 9 & n.21 (2001) [hereinafter *Competitive Bidding Rules, NPRM*].

Before the FCC was able to award the permanent licenses, however, Congress enacted the Balanced Budget Act of 1997, Pub. L. No. 105–33, 111 Stat. 251, 258–60 (1997). With limited exceptions, the Balanced Budget Act amended the Communications Act by terminating the FCC's authority to "issue any license or permit using a system of random selection" after July 1, 1997, 47 U.S.C. § 309(i)(5)(a), and requiring it to use instead "a system of competitive bidding," *id.* § 309(j).[1] In April 1999, concluding that it was "without authority to process the pending mutually exclusive RSA applications pursuant to the rules and requirements" of the lottery system, the FCC dismissed without prejudice all pending applications for the cellular telephone licenses at issue in this case, including Ranger/Miller's. *In the Matter of Certain Cellular Rural Service Area Applications*, 14 FCC Rcd 4619, 4620, ¶ 5 (WTB 1999) (dismissing pending applications for six of the RSA markets); *In the Matter of Cellular Rural Service Area Applications in Markets Nos. 599A and 672A,* ¶ 1 (WTB April 29, 1999) (J.A. at 5) (dismissing pending applications for two of the RSA markets).

On January 31, 2001, the FCC proposed holding an auction open to all interested bidders at which it would award licenses for those RSAs for which licenses had not yet been awarded or designated. *Competitive Bidding Rules, NPRM*, 16 FCC

---

[1] The Omnibus Budget Reconciliation Act of 1993 had given the FCC the option of using lotteries or competitive bidding to assign licenses for which applications were on file before July 26, 1993. Pub. L. No. 103–66, § 6002(a), 107 Stat. 312, 387 (1993).

Rcd at 4297, ¶ 1. By that time, there were only four such RSAs. *Id.*[2] Ranger/Miller opposed that proposal, contending that both a provision of the Balanced Budget Act and principles of equity required the FCC to limit the pool of bidders to those that had filed applications prior to July 1, 1997. The Commission rejected those contentions and implemented its open auction proposal. *In the Matter of Implementation of Competitive Bidding Rules to License Certain Rural Service Areas, Report and Order*, 17 FCC Rcd 1960, 1961, ¶ 1, 1969, ¶ 16 (2002) [hereinafter *Competitive Bidding Rules, Report and Order*]. Although eligible to do so, Ranger/Miller did not participate in the auctions. On June 4, 2002, the FCC completed the auctions, and thereafter Ranger/Miller petitioned this court for review. On July 1, 2003, we rejected Ranger/Miller's arguments and denied their petition. *Ranger/Miller I*, 333 F.3d at 262.

In the present action, Ranger/Miller challenge the validity of the remaining four of the eight RSA licenses for which they originally applied. Three of those licensees won their respective lotteries in 1989 and 1990, but were disqualified in 1992 because their percentage of foreign ownership exceeded the then-applicable statutory limits. *In re Applications of Cellwave Telephone Services L.P., FutureWave General Partners L.P., and Great Western Cellular Partners*, 7 FCC Rcd 5955 (1992); 47 U.S.C. §§ 310(b)(1), (3). This circuit upheld those dismissals. *Great W. Cellular Partners v. FCC*, 1995 WL 761842 (D.C. Cir. 1995); *Cellwave Tel. Services L.P. v. FCC*, 30 F.3d 1533 (D.C. Cir. 1994). In December 2000, however, Congress passed the Launching Our Communities' Access to Local Television Act of 2000 (Local Television Act), which directed the FCC to reinstate the three dismissed applicants. *See* District of Columbia Appropriations Act of FY 2001, Pub. L. No. 106–553, § 1007, 114 Stat. 2762 (2000). Pursuant to the Local Television Act, the FCC awarded those licenses to the congressional designees in March 2001. In an

---

[2] As discussed below, by 2001 three of the original eight RSAs had been designated by Congress, and one had been awarded by the FCC.

application to the FCC, Ranger/Miller challenged those awards on the ground that, in directing the reinstatements, the Local Television Act violated the constitutional separation of powers by overruling the final judgment of this court.

Ranger/Miller also submitted a petition for reconsideration to the FCC's Wireless Telecommunications Bureau (Wireless Bureau), challenging a fourth license that the FCC issued to Zephyr Tele–Link in 2000. Following the disqualification of an initial lottery winner, Zephyr's application had been selected in an April 1992 relottery. Its license had not yet been issued, however, when the Balanced Budget Act was passed in 1997, and Zephyr's was among the pending applications that the FCC dismissed in 1999. In 2000, the FCC reinstated Zephyr's application and awarded it a license. *In the Matter of Zephyr Tele–Link,* 15 FCC Rcd 4247 (WTB 2000). Ranger/Miller argued that the award to Zephyr conflicted with the provision of the Balanced Budget Act that barred the issuance of licenses using lotteries after July 1, 1997. *See* 47 U.S.C. § 309(i)(5)(A). Finally, Ranger/Miller also sought reconsideration of the Wireless Bureau's rejection of their request, in the alternative, for a refund of their initial filing fees in the event that their other challenges were denied.

On May 9, 2002, the FCC rejected Ranger/Miller's challenges to the award of the four licenses. *In the Matter of Certain Cellular Rural Service Area Applications, Opinion and Order,* 17 FCC Rcd 8508 (2002) [hereinafter *2002 Opinion and Order*]. The Commission found that the Local Television Act required it to reinstate the three congressional designees and that it lacked the power to declare an act of Congress unconstitutional. *Id.* at 8517–18, ¶ 15. The Commission also concluded that, although the Balanced Budget Act barred it from conducting new lotteries after July 1, 1997, the Act did not bar the FCC from processing Zephyr's application by using the results of a lottery that had taken place prior to that date. *Id.* at 8513, ¶ 8. The Commission did not address Ranger/Miller's alternative request for a refund of filing fees, leaving the Wireless Bureau's rejection in place.

Ranger/Miller now appeal both the denial of their challenges to the four licenses and the denial of their request for a refund.

## II

The FCC advances a threshold objection to Ranger/Miller's challenge to the four licenses, asserting that the appellants lack standing to raise such a claim. As the Supreme Court has explained, the "irreducible constitutional minimum" requirements of standing are:

> (1) that the plaintiff have suffered an "injury in fact" — an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of — the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The question here is whether Ranger/Miller satisfy the third, "redressability" prong. We conclude that they do not.

Ranger/Miller contend that their injury would be redressed by vacating the award of the four challenged licenses because, if the licenses were withdrawn, Ranger/Miller would have a reasonable chance of obtaining them. The appellants concede that, if the awards were vacated, the Balanced Budget Act would require the FCC to reassign the licenses via auction. Reply Br. at 6.[3] But they contend that such an auction would

---

[3] In addition, the Local Television Act independently provides that, if the FCC finds that one of the three congressional designees is otherwise ineligible, "the Commission shall grant the license . . . by competitive bidding pursuant to" 47 U.S.C. § 309(j). Local Television Act, § 1007(b)(5).

have to be "closed" — that is, limited to bidders "from the original pool" that applied for the lotteries in 1988 and 1989. *Id.* at 5–6. And because the remaining members of that original pool are a small number of small companies like Ranger/Miller, the appellants believe they would have a reasonable chance of submitting winning bids. *Id.* at 5.

The flaw in this argument is that the consequence of a Ranger/Miller victory on this appeal would not be an auction limited to the original applicants, but rather an open auction in which virtually any interested company would be permitted to compete. In 2002, the FCC determined that "all entities" should be permitted to participate in an auction for cellular telephone service in RSA markets. *Competitive Bidding Rules, Report and Order*, 17 FCC Rcd at 1966, ¶ 10.[4] As we noted above, this court recently affirmed that decision in a separate appeal. In *Ranger/Miller I*, we rejected Ranger/Miller's contention that another provision of the Balanced Budget Act, 47 U.S.C. § 309(*l*), required the FCC to restrict the pool of bidders to the original applicants. *Ranger/Miller I*, 333 F.3d at 258–60. And we likewise rejected Ranger/Miller's claim that the Commission had acted unreasonably in opting to permit bidding by new applicants. In particular, we rejected the appellants' contention that the Commission had

---

[4] Although the 2002 decision technically applied to only the four cellular RSA markets disputed in *Ranger/Miller I*, there is little doubt that the FCC would follow that recent precedent were Ranger/Miller to win this appeal and overturn the four licenses they have challenged here. The 2002 decision applied to the only RSA markets that remained unlicensed or undesignated at the time. *Competitive Bidding Rules, Report and Order*, 17 FCC Rcd at 1961, ¶ 1 & n.2. Those markets were available because "the initial lottery winner was disqualified or ha[d] otherwise withdrawn its application," *id.* at 1961, ¶ 1, the same situation that would prevail were we to uphold Ranger/Miller's appeal. Moreover, in the order under review here, the FCC rejected Ranger/Miller's argument that future auctions should be limited to the original applicant pool, *2002 Opinion and Order*, 17 FCC Rcd at 8514, ¶ 10, thus confirming the Commission's intention to award through open auctions all RSA licenses that become available.

failed to take appropriate account of equitable considerations in deciding to open the auction pool.  *Id.* at 260–61.

The appellants offer two reasons why *Ranger/Miller I*'s affirmance of the FCC's open auction policy should not apply in the event the four licenses at issue here are vacated. Neither survives even facial examination.  First, appellants suggest that *Ranger/Miller I* was wrongly decided, and that this panel therefore should not follow it.  But follow it we must.  Once a panel of this court has decided a matter, subsequent panels are bound by that decision unless and until it is changed by the court en banc.  *See, e.g., People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1244 (D.C. Cir. 2003) (citing *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc)).  Second, at oral argument, counsel for Ranger/Miller suggested that *Ranger/Miller I* should be distinguished from the instant case on the ground that the equitable arguments favoring closed auctions in the four markets at issue here are different from the equitable arguments applicable to the markets considered in *Ranger/Miller I*.  But, as the FCC's order points out, Ranger/Miller's petition before the Commission raised the same arguments for all eight licenses, *2002 Opinion and Order*, 17 FCC Rcd at 8514, ¶ 10, and on appeal Ranger/Miller have offered no reason to distinguish between the equitable considerations surrounding the licenses contested here and those implicated in *Ranger/Miller I*.

As we have noted above, to satisfy the third prong of constitutional standing, Ranger/Miller's injuries must be redressable by a judicial decision.  In the open auction that FCC policy dictates would follow a Ranger/Miller victory, the appellants would face not a small number of small companies, but rather a large number of large telecommunications firms with the capacity to pay large sums for the RSA licenses. And as the appellants candidly admit: "The chances of Ranger/Miller outbidding those giants are virtually nil. . . .  By opening the auction, the FCC as a practical matter made it impossible for the original applicants to compete."  Reply Br. at 5.  That concession makes it clear that Ranger/Miller's alleged injuries cannot be redressed by this court.  While it is

true that "a plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost opportunity," a plaintiff's injury is neither cognizable nor redressable when such an opportunity is entirely "illusory." *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150–51 (D.C. Cir. 1989) (emphasis in original). In *CC Distributors*, we found that the lost opportunity to compete was not illusory because the plaintiffs had demonstrated their "capacity to compete for and to obtain [the] contract[ ]." *Id.* at 151. The appellants here, however, concededly have no such capacity, and we "cannot find a basis for standing if there is no realistic possibility of those competing for a position to receive it once the supposed illegality is corrected." *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56 (D.C. Cir. 1991). Because it is "merely speculative" that Ranger/Miller's "injury will be redressed by a favorable decision," *Bennett*, 520 U.S. at 167, they lack standing to prosecute their challenge to the four RSA licenses.[5]

## III

The remaining question is whether Ranger/Miller are entitled to refunds of their application filing fees. Since a victory on that issue would bring them a small monetary reimbursement (the filing fee was $200.00 per application), there is no doubt that Ranger/Miller have standing to pursue their refund claim. The FCC does, however, raise a different threshold objection.

---

[5] In a section of their brief that repeats arguments they made in *Ranger/Miller I*, the appellants also contend that the FCC should not have dismissed their then-pending cellular applications in April 1999. Appellants' Br. at 16–35. We are uncertain whether the appellants mean to continue to press this argument in light of the disposition of *Ranger/Miller I* — which was announced after the brief in the instant case was filed — but if they do, our conclusion that Ranger/Miller lack standing to challenge the licenses applies equally to their challenge to the dismissals.

The FCC contends that our consideration of Ranger/Miller's refund claim is barred by § 405 of the Communications Act, which requires that the Commission be afforded an "opportunity to pass" on an issue as "a condition precedent to judicial review." 47 U.S.C. § 405(a). It asserts that the Commission did not have an opportunity to pass on the refund issue, because Ranger/Miller did not present the argument in briefs filed with the Commission itself, but rather mentioned it only in a footnote to their Petition for Reconsideration to the Wireless Bureau — a note that referenced Ranger/Miller's earlier filing on the subject.[6] This case, the FCC argues, is thus controlled by *Bartholdi Cable Co. v. FCC*, in which we held that a litigant cannot preserve an issue for judicial review merely by raising it before an FCC bureau, and that a footnote in an application to the Commission that does nothing more than incorporate all claims previously made before the bureau is likewise insufficient. 114 F.3d 274, 279–80 (D.C. Cir. 1997).

The FCC's reliance on *Bartholdi* is flawed for two reasons. First, its contention that the refund issue was never before the Commission itself is simply incorrect. It is true that Ranger/Miller did not present this issue — or any issue — in briefs filed directly with the Commission. But that was only because the Commission chose to reach down into the Wireless Bureau and decide the case based on Ranger/Miller's petition for reconsideration to that bureau. *See* Appellees' Br. at 35 n.30; Reply Br. at 18–19. And as the FCC order under review makes clear, there is no question that the Commission had that petition before it when it decided this case. *See 2002 Opinion and Order*, 17 FCC Rcd at 8508, ¶ 1 & n.1 (stating that the Commission "has before it ... [the] petition for reconsideration filed by Ranger Cellular and Miller Communications").

---

[6] The footnote stated: "Petitioners continue to contend that, if their applications were correctly dismissed by the Bureau, a refund of their filing fee is due. However, we have nothing to add to our original presentation on this point." Pet. for Recons. at 20 n.12 (J.A. at 67).

Second, unlike the situation in *Bartholdi*, both Ranger/Miller's footnote and the filing that it referenced were in submissions made to the same decisionmaker.[7] In *Bartholdi*, the footnote was in a brief filed with the Commission, while the arguments to which it referred were in papers filed with a bureau. By contrast, in this case the footnote was in a petition to the Wireless Bureau and its reference to "our original presentation," Pet. for Recons. at n.12 (J.A. at 67), was to a filing previously made with that same bureau — a filing that addressed the refund claim in detail. *See* Consol. Pet. for Recons. at 4–6 (J.A. at 42–44). Ranger/Miller thus had every reason to expect that the relevant decisionmaker, which it thought would be the Wireless Bureau, would be familiar with those arguments without the need to repeat them. And because the Commission chose to decide the case based on the filings made with the Bureau, those filings gave it a fair opportunity to pass on Ranger/Miller's claim for a refund.

As there is no bar to our consideration of the appellants' claim for a refund of their application fees, we turn to the merits of that claim. Ranger/Miller's argument rests on FCC Rule 1.1113, which states as follows:

> The full amount of any fee submitted will be returned or refunded, as appropriate. . . .
>
> (4) When the Commission adopts new rules that *nullify* applications already accepted for filing, or [a] new law or treaty would render useless a grant or other positive disposition of the application.

47 C.F.R. § 1.1113 (emphasis added). Ranger/Miller insist that the new open auction rules adopted by the Commission in the wake of the Balanced Budget and Local Television Acts effectively "nullif[ied]" the lottery applications they filed in

---

[7] We therefore need not decide whether Ranger/Miller's terse footnote — which, in contrast to the note in *Bartholdi*, clearly specified the point at issue, *see supra* note 6 — would have been sufficient to preserve the refund claim had it been part of the only brief that Ranger/Miller filed with the expected decisionmaker.

1988 and 1989, thus triggering Rule 1.1113's right to a fee refund.

The FCC replies that the new rules did not nullify Ranger/Miller's applications within the meaning of Rule 1.1113, because the appellants got what they paid for: the right to participate in lotteries for eight cellular licenses. There is no dispute that Ranger/Miller did participate in those lotteries, although they lost them all. In the FCC's view, the fact that, under the new rules, Ranger/Miller's original applications did not give them the further right to a closed auction when the original lottery winners were disqualified, does not constitute "nullification" of those original applications. As the Wireless Bureau explained:

> [P]etitioners were not entitled to a refund of their filing fees because they had actually participated in the initial lotteries for their respective markets, thus affording them a full opportunity to be selected.... The fact that second lotteries were held prior to the passage of the Balanced Budget Act of 1997 for certain markets in which the initial tentative selectee was subsequently disqualified does not create a vested right in applicants that second lotteries would be held for such markets nor mandate the refund of fees under section 1.1113(a)(4).

*In the Matter of Certain Cellular Rural Service Area Applications, Order*, 16 FCC Rcd 4860, 4863–64, ¶ 7 (WTB 2001).

Reviewing courts must "defer to an agency's reading of its own regulations unless that reading is 'plainly erroneous or inconsistent with the regulation[s].'" *Global Crossing Telecommunications, Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). In light of the agency rationale described above, there is nothing plainly erroneous or inconsistent about the FCC's conclusion that Ranger/Miller's original applications were not nullified within the meaning of Rule 1.1113. Indeed, had Ranger/Miller won the lotteries to which those applications gave them admission, they would have received their licenses long before the Balanced Budget Act and Local Television Act were enacted, and the new rules would have had no impact on them

at all. Accordingly, we affirm the FCC's denial of Ranger/Miller's request for refunds.

## IV

Concluding that Ranger/Miller lack standing to challenge the award of four cellular telephone licenses, we dismiss that aspect of their appeal for want of jurisdiction. While there is no similar bar to our consideration of the appellants' challenge to the denial of their alternative request for a refund of filing fees, we conclude that the FCC reasonably interpreted its own rules in denying that request.

*Dismissed in part and affirmed in part.*