# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

–––––––

Argued November 5, 2004      Decided December 28, 2004

No. 03-1444

NEW JERSEY TELEVISION CORPORATION,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

–––––––

Appeal of an Order of the
Federal Communications Commission

–––––––

*Stuart W. Nolan, Jr.* argued the cause for appellant. With him on the briefs was *Barry D. Wood*.

*Stanley R. Scheiner*, Counsel, Federal Communications Commission, argued the cause for appellee. On the brief were *John A. Rogovin*, General Counsel, *Daniel M. Armstrong*, Associate General Counsel, and *C. Grey Pash, Jr.*, Counsel.

Before: HENDERSON and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  New Jersey Television

Corporation ("NJTV") appeals from a Federal Communications Commission order dismissing its application to build a low-power television broadcast station. The FCC ordered dismissal, seventeen years after NJTV filed, because the station would unduly interfere with a full service television station on the same channel. *New Jersey Television Corporation* (*NJTC*), 18 FCC Rcd 24409, 24409 (2003) (citing 47 C.F.R. § 74.706). NJTV now requests us to order the FCC to keep the application on file and give it preferential consideration if the channel becomes available again. Alternatively, NJTV requests an order of "displacement relief"—permission that the Commission in some cases grants licensees and permittees to modify their broadcasting to reduce interference and thus preserve their broadcast entitlement—for which it would have been eligible had the FCC granted the application promptly. NJTV lacks standing to make the first request and failed to assert the second before the Commission clearly enough to meet the requirements of 47 U.S.C. § 405(a). Accordingly, we dismiss the appeal.

* * *

NJTV applied in 1981 to build a low-power station on Channel 42 in Cherry Hill, New Jersey. In 1983, pursuant to § 309(i) of the Communications Act, 47 U.S.C. § 309(i), the FCC established lotteries—in lieu of comparative hearings—to grant such licenses when mutually exclusive applicants filed. Three years later, the FCC accepted NJTV's application for filing and held a lottery. NJTV lost, but the lottery became moot in 1998. That year, the FCC granted Channel 42 to WTXF for use in that station's transition from analog to digital broadcasting; it then dismissed both the lottery winner's and NJTV's applications. WTXF may operate one analog and one digital channel until the digital transition concludes, at which point WTXF will return one channel to the FCC. See 47 U.S.C. § 309(j)(14). NJTV petitioned for reconsideration, which the

FCC staff denied. The FCC affirmed the dismissal in 2003, and NJTV now appeals.

Our analysis begins with "[t]he requirement that jurisdiction be established as a threshold matter." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). The priority for jurisdictional issues, however, doesn't control the sequence in which we resolve non-merits issues that prevent us from reaching the merits. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999); see also *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000). One such issue is Article III standing, the familiar elements of which are (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Apropos injury in fact, the harm must be "concrete and particularized . . . and actual or imminent, not conjectural or hypothetical." *Id*. (citations and internal quotation marks omitted). Loss of an opportunity to compete for a benefit may be an injury in fact if it is not merely "illusory." *Ranger Cellular v. FCC*, 348 F.3d 1044, 1050 (D.C. Cir. 2003).

NJTV here asserts "an interest in not being exposed to competing proposals in a prohibitive auction scenario." App. Br. at 17. In other words, if WTXF returns Channel 42 to the FCC and the FCC makes Channel 42 available again, NJTV hopes that the Commission will assign the channel to one of the undismissed applicants from the 1986 lottery. With NJTV being evidently the only such applicant (if it prevails here), its prospects of securing the channel would be superb.

This claim is something of an upgrade from what NJTV sought explicitly from the Commission, which was merely that its application be kept on file. But that deficiency doesn't in itself undermine NJTV's assertion of standing here, as the Article III requirement "kicks in" only "[w]hen the petitioner

later seeks judicial review." See *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002). The question remains whether any combination of fact or doctrine, presented in the administrative record or before the court, puts flesh on NJTV's notion that being kept on file would have had a real prospect of leading to preferential treatment. *Id.* at 899-901. No such combination appears.

The digital transition may not end at a precisely foreseeable time, but it will end. An interest in the enforcement of cut-off rules, which is what NJTV is really asserting, nevertheless "is just that—an interest, not a vested right." *Bachow Communications, Inc. v. FCC*, 237 F.3d 683, 688 (D.C. Cir. 2001). Even so, if the FCC had a *policy* of protecting the interests of parties who prevailed under ancient cut-off rules and competitions, NJTV's prospects of securing the desired entitlement still might be ranked a "realistic possibility." See *Ranger Cellular*, 348 F.3d at 1050.

But NJTV points to no such policy, and we can discern none. Indeed, on the very day it dismissed NJTV's application, the Mass Media Bureau unceremoniously threw out the lottery winner's as well. Further, the Commission appears to have a practice of moving on from obsolete allocation systems when new ones become available. Cf. *Bachow*, 237 F.3d at 686. Finally, 47 U.S.C. § 309(j)(1) seems to *require* auctioning generally, subject to exceptions that appear not to include low-power television. See § 309(j)(2). The FCC has in fact read § 309(j) as placing low-power stations within the auction process. *In re Amendment of Parts 73 and 74 of the Commission's Rules To Establish Rules for Digital Low Power Television, Television Translator, and Television Booster Stations and To Amend Rules for Digital Class A Television Stations*, 19 FCC Rcd 19331, at ¶ 163, 2004 FCC LEXIS 5632 (2004). We of course do not prejudge the validity of this

conclusion, but it is ample—even if it were later found to be an invalid reading of § 309(j)—to demolish any idea that the Commission generally preserves the results of ancient lotteries in amber. NJTV has come nowhere near showing that the victory it desires is a "realistic possibility."

NJTV next requests the displacement relief to which it would have been entitled had the FCC granted the application by 1997—when the relevant regulation protecting digital channels took effect. See 47 C.F.R. § 74.706. Of course, the FCC must be afforded an "opportunity to pass" on an appealable issue as "a condition precedent to judicial review." 47 U.S.C. § 405(a); see *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1182 (D.C. Cir. 2003). If the disputed issue was not raised before the FCC, we will nonetheless review it if "a reasonable Commission *necessarily* would have seen the [issue] as part of the case presented to it." *Time Warner Entertainment Co. v. FCC*, 144 F.3d 75, 81 (D.C. Cir. 1998).

NJTV failed to satisfy § 405(a). In its petition for reconsideration, NJTV did not indicate that its request for displacement relief arose from a claim of unreasonable FCC delay. The theory crystallized slightly in NJTV's application for full Commission review, which alleged that NJTV "would have been unquestionably eligible for a displacement frequency" had the FCC not delayed processing. The solution NJTV proposed, however, was for the FCC to "at least give NJTV the opportunity to pursue its dream of New Jersey-oriented service once adequate spectrum . . . becomes available again." That request was too vague to provide the FCC an opportunity to pass on the idea that the FCC's delay had been so unreasonable as to entitle NJTV to the remedy of being treated as if it had prevailed in the initial competition. See *Bartholdi Cable Co., Inc. v. FCC*, 114 F.3d 274, 279 (D.C. Cir. 1997) ("The Commission need not sift pleadings and documents to identify arguments that are not stated with clarity by a petitioner.") (internal quotation marks

and citation omitted).

Accordingly, the appeal is

*Dismissed*.