**SAVE THE BAY, INC.,**
**Plaintiff-Appellant,**

v.

**The UNITED STATES CORPS OF ENGI-NEERS, United States Army, Colonel Drake Wilson, and E.I. Du Pont De Nemours and Company, Defendants-Appellees.**

No. 79–1432.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1980.

As Modified on Denial of Rehearing and Rehearing En Banc March 17, 1980.

Robert W. Smith, Biloxi, Miss., Levi, Denham & Russell, Earl L. Denham, Ocean Springs, Miss., for plaintiff-appellant.

White & Morse, Stanford E. Morse, Jr., Gulfport, Miss., David B. Sebree, Legal Dept., E.I. Du Pont De Nemours & Co., Carl B. Everett, Wilmington, Del., James W. Moorman, Asst. Atty. Gen., U. S. Dist. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., L. K. Travis, Asst. U. S. Atty., Jackson, Miss., Dirk D. Snel, Nancy B. Firestone, Attys., Washington, D. C., for defendants-appellees.

Before BROWN, TJOFLAT and GARZA, Circuit Judges.

GARZA, Circuit Judge:

Appellant appeals from the District Court's adoption and entry of judgment in conformity with the refusal of the United States Magistrate, acting on behalf of the District Court by consent of the parties, to require the United States Corps of Engineers to prepare an Environmental Impact Statement (EIS) as provided for under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.* Appellants argue the Court below erred in concluding that the environmental assessment by the district engineer was reasonable and based on substantial evidence, that the activity involved was not a major federal action significantly affecting the quality of the human environment, and that the Corps of Engineers was not required to consider the environmental consequences of the entire project but only the effects of the installation and maintenance of a twenty-four inch outfall pipeline. Appellees argue on appeal that Appellants have no standing to challenge the actions of the Corps of Engineers. For the reasons stated below, we affirm the ruling of the United States Magistrate.

## FACTS

At the time this litigation began, the defendant, E.I. Du Pont De Nemours & Co., Inc., proposed to construct and operate a massive titanium dioxide manufacturing facility in Delisle, Mississippi. Pursuant to this plan, Du Pont sought necessary authorization and permits from appropriate state and federal agencies.

On November 21, 1974, Du Pont sought authorization from the defendant, Army Corps of Engineers, to install a twenty-four inch diameter effluent line into the marshlands and Bay of St. Louis. The effluent line would carry approximately two million gallons per day of industrial wastewater

and discharge it into the Bay of St. Louis. The line would be approximately 2,200 feet in length extending into the Bay and construction would require removal of 610 cubic yards of dredged material from the Bay.

On February 3, 1975, the Mississippi Air and Water Pollution Control Commission, acting pursuant to authority delegated to it by the Environmental Protection Agency, issued a National Pollutant Discharge Elimination System (NPDES) permit to Du Pont allowing discharge of the wastewater in accordance with the conditions of the permit.

Following solicitation of comments from federal, state and local agencies concerning the proposed pipeline construction permit, the Corps of Engineers announced a public hearing would be held on June 19, 1975, to answer any questions concerning issuing of the pipeline construction permit. In keeping with the Corps' prior determination that only the construction of the pipeline was subject to their regulation, the public notice for the hearing was limited to the installation of the twenty-four inch diameter pipeline and made no mention of consideration of other aspects of the Du Pont plant in the issuance of its permit. On June 19, 1975 the hearing was held and all proponents and opponents were allowed to express their views. The proponents consisted mostly of governmental or business organizations and generally testified as to the favorable economic impact the plant would have. The opponents, consisting mostly of ecological and recreational organizations, testified generally that a potential danger to marine life existed and that an Environmental Impact Statement was necessary.

On July 17, 1975, Colonel Drake Wilson, District Engineer for the Mobile Corps of Engineers, issued a Statement of Findings assessing the impact the proposed activity would have on the environment. The Corps determined there would be no adverse effect on air quality and that water quality would be only temporarily affected. The findings also noted the issuance of the NPDES permit and that the Environmental Protection Agency had no objection to the issuance of the Corps' permit. The statement, also taking into consideration the determinations of the Mississippi Marine Resources Council and the Gulf Coast Research Laboratory, found there would be no significant adverse effect on land use, visual aesthetics, wildlife, sealife, vegetation, or historical interests. Based on the administrative record, Colonel Wilson directed that the permit be issued. The permit only authorized building the pipeline and was subject to several conditions, one of which required that Du Pont have a proper NPDES permit governing the effluent discharge.

The Plaintiff, Save the Bay, Inc., brought suit pursuant to the National Environmental Policy Act (NEPA) against the United States Army Corps of Engineers, the United States Army, Colonel Drake Wilson, Mobile District Office of the Corps of Engineers, and Du Pont seeking declaratory and injunctive relief and monetary damages. The case was referred to the United States Magistrate by the District Judge and thereafter the defendant's Motions for Summary Judgment were granted and judgment was entered December 16, 1977 dismissing the complaint with prejudice.

## STANDING

Save the Bay's complaint alleges that it is a nonprofit corporation organized under the laws of the State of Mississippi; that its membership is primarily composed of numerous full-time and part-time residents of Harrison and Hancock Counties in the State of Mississippi; and that its members will be adversely affected economically, aesthetically and environmentally.

■ Appellee Du Pont urges on appeal that Save the Bay has failed to establish standing under § 10 of the Administrative Procedures Act, 5 U.S.C. § 702. Specifically, Du Pont argues that under *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), Save the Bay must allege that its members "use" the area and that the proposed federal action will signifi-

cantly affect their "use". Du Pont's reliance on *Sierra Club v. Morton, supra,* is misplaced. Here, the Plaintiff has alleged economic, aesthetic and environmental injury to its members and clearly has gone beyond mere general allegations of grievance on behalf of the public interest. Du Pont's argument, that failure to specifically allege "usage" of the geographic area is fatal to Plaintiff's standing, is without merit. An obvious inference of the English language is that residents of a geographical area "use" that geographical area. An allegation of residence coupled with an allegation of injury caused by federal action affecting the area of that residence clearly demonstrates that the party seeking review is among those injured. We fail to see how the acts of camping, hiking, fishing or sightseeing, in a particular geographic location, held sufficient for standing in *United States v. SCRAP, supra,* can be considered more relevant for purposes of standing than can the act of residing in a particular geographic location.

## REASONABLENESS OF THE CORPS' DECISION

The Court below noted that the standard for review of an agency determination that an Environmental Impact Statement need not be prepared is whether such determination is reasonable. This standard was set forth by this Court in *Save Our Ten Acres v. Kreger,* 472 F.2d 463 (5th Cir. 1973). If the determination is reasonable and made objectively and in good faith on a reviewable environmental record, the determination must be upheld. The Court below found that the environmental assessment prepared by the Corps completely and fully addressed the possible environmental consequences, that the assessment was based on substantial evidence, and that Corps complied with appropriate federal statutes and regulations. Appellants contend that the Corps' determination was unreasonable. They argue that the testimony and evidence offered in opposition to the building of the pipeline and plant should compel the conclusion that an EIS is required. The Appellants further argue that the Corps abdicated its responsibilities by failing to conduct independent studies and by considering the evaluations of other governmental agencies concerning the pipeline's potential adverse effects.

■■ We do not agree with Appellant's contentions. Without detailing every point and counter-point of evidence before the Corps, it is clear that the Corps had testimony, evidence and comments from individuals and governmental agencies which could lead it to reasonably conclude that an EIS would not be necessary. The Corps received and reviewed comments from several governmental agencies[1] as well as from quasi-governmental and business organizations. With little exception, all comments from governmental agencies indicated there would be no significant adverse impact on the environment. We cannot agree with Appellant that consulting with these agencies was improper. The National Environmental Policy Act, 42 U.S.C. § 4332(2)(C) requires that federal agencies consult with other agencies whose area of expertise is superior to their own. Of course, this should not be understood as allowing the Corps to base their determination solely on the comments of other agencies. Perhaps the most basic requirement of NEPA is that all federal agencies make an *independent* environmental assessment of the proposed action. The Court below correctly recognized this in distinguishing this case from *Mahelona v. Hawaiian Electric Company,* 418 F.Supp. 1328 (D.Hawaii 1976) wherein the Corps of Engineers erroneously considered the advisements of the EPA as de-

---

1. Among those agencies were the following: the Environmental Protection Agency, the Department of Interior, Fish and Wildlife Service, the Department of Commerce, the National Oceanic and Atmospheric Administration, the Mississippi Marine Resources Council, the Mississippi Air and Water Pollution Control Commission, and the Mississippi State Clearing House for Federal Programs.

terminative and consequently failed to independently determine whether or not the proposed action would have a significant impact on the human environment. For these reasons we hold the Corps' decision was not unreasonable.

### A MAJOR FEDERAL ACTION?

Appellants contend the court below erred in not finding the grant of the pipeline construction permit was a "major Federal action significantly affecting the quality of the human environment", under 42 U.S.C. § 4332(2)(C), and therefore requiring preparation of an EIS. In furtherance of this contention they argue that granting almost any Federal permit to this massive multimillion dollar manufacturing plant should trigger the obligations of NEPA.

The Court below held that the provisions of NEPA must be read in context of other language in the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251 *et seq.*, which places control of water pollution caused by discharges of effluents in the hands of the states and the EPA. *United States v. SCRAP, supra.* The court went on to hold, citing *Sierra Club v. Hodel*, 544 F.2d 1036 (9th Cir. 1979) and *Port of Astoria v. Hodel*, 8 ERC 1156, aff'd 595 F.2d 467 (9th Cir. 1979), that the issuance of the Corps' permit was not a sufficient nexus between the Corps and construction of the Du Pont plant to make the Corps a partner in such construction and thereby "federalize" the construction of the Du Pont plant. In other words, the granting of the pipeline

permit by the Corps was not a "major Federal action" within the meaning of NEPA.

In addition to the Court's holding, it should also be noted that FWPCA, 33 U.S.C. § 1371(c)(1),[2] ordinarily prohibits the issuance of a NPDES permit from being deemed a major Federal action significantly affecting the quality of the human environment within the meaning of NEPA. Furthermore, § (c)(2) prohibits Federal agencies, under guidance of NEPA, from reviewing any effluent limitation under a NPDES permit or from imposing any effluent limitation as a condition precedent to issuance of a license.

The decision of the Court below in no way held that the Corps was precluded from preparing an EIS because of FWPCA, but instead held that the Corps' determination, of whether or not issuance of the construction permit was a "major Federal action", was limited to construction and operation of the pipeline itself and correctly held that the environmental consequences of the effluent was a factor to be excluded from their consideration.

 In reaching our conclusion on this point we are not unmindful of the impact that building of this massive manufacturing plant will have on the people of Harrison and Hancock Counties, but the requirements of NEPA do not reach private acts— only "major Federal actions." We fail to see how granting of the pipeline construction permit, after issuance of a valid NPDES permit, can be considered a *major*

---

**2.** 33 U.S.C. § 1371(c)(1) and (2) provides as follows: (c)(1) Except for the provision of Federal financial assistance for the purpose of assisting the construction of publicly owned treatment works as authorized by section 1281 of this title, and the issuance of a permit under section 1342 of this title for the discharge of any pollutant by a new source as defined in section 1316 of this title, no action of the Administrator taken pursuant to this chapter shall be deemed a major Federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969 (83 Stat. 852); and (2) Nothing in the National Environmental Poli-

cy Act of 1969 (83 Stat. 852) shall be deemed to—

(A) authorize any Federal agency authorized to license or permit the conduct of any activity which may result in the discharge of a pollutant into the navigable waters to review any effluent limitation or other requirement established pursuant to this chapter or the adequacy of any certification under section 1341 of this title; or

(B) authorize any such agency to impose, as a condition precedent to the issuance of any license or permit, any effluent limitation other than any such limitation established pursuant to this chapter.

Federal action. An examination of the guidelines issued by the Council on Environmental Quality, 40 C.F.R. 1500.6(c), indicates that a private project does not become a "major Federal action" merely because of some incidental federal involvement. In this case, the pipeline itself was not a necessity for operation of the plant. At least one alternative method of discharge, not requiring any Corps permit, was available to Du Pont. We are not saying that the requisite Federal action must be a condition precedent to private action in order for preparation of an EIS to be required. But we do hold that in order for there to exist "major Federal action" some greater involvement, than is present in the case at hand, must exist.

### THE PIPELINE OR THE WHOLE PLANT?

Appellant's most vigorously argued point on appeal and perhaps the point which would control the outcome of this case contests the Corps looking only to the environmental consequences of the pipeline construction and maintenance instead of considering the entire Du Pont project in its decision on whether or not to prepare an EIS.[3] Appellants assert that narrowing the scope of inquiry to the pipeline construction alone is the "blinder" approach which should be rejected by this Court. By analogy they compare the Du Pont facility to a living organism which at one end eats chlorine gas and at the other end excretes hydrocloric acid, iron, chromium, zinc, and other nastiness to the tune of 2,000,000 gallons per day. Their argument is that but for the permit there would be no pipeline; without the pipeline there would be no excretion; without the ability to excrete the plant would suffocate in its own waste. They argue that the permit "enables" the plant to exist and therefore the entire plant should be taken into consideration in whether or not the pipeline construction

permit should be issued. In support of this "Enablement Theory", appellants cite *Port of Astoria v. Hodel, supra, Mahelona v. Hawaiian Electric Company, Inc., supra,* and *Citizens for Clean Air, Inc. et al. v. United States Army Corps of Engineers et al.,* 349 F.Supp. 696 (S.D.N.Y.1972).

Upon review of these cases, this Court does not disagree with their reasoning but the circumstances of those cases are clearly distinguishable from those before us. The case of *Citizens for Clean Air* preceded the FWPCA Amendments of 1972 and therefore is no longer supportive of the proposition advanced here. In *Port of Astoria* there existed a long-term contractual relationship between a Federal agency and a private corporation in which the proposed private manufacturing plant was entirely dependent upon electrical power to be supplied by the Federal agency. In *Mahelona* the problem was not that the Corps failed to examine the effects of the electrical generating plant, but rather failed to review the consequences of its own construction permit allowing a wastewater discharge facility. In short, the results of these cases do not compel the conclusion which the Appellants desire. Absent facts or circumstances which are not present here, we decline to hold that NEPA required the Corps as a matter of law to consider the entire Du Pont facility in determining whether or not an EIS was necessary.

AFFIRMED.

---

3. We express no opinion as to the proper scope and extent of coverage of an EIS should one have been necessary.